# THE PLUME & ATWOOD MANUFACTURING COMPANY ET AL.

## v.

# FRANK C. CALDWELL, ASSIGNEE, ET AL.

*Insolvency—Judgment by Confession—Assignment—Attachments—Priority—County Court—Jurisdiction of.*

1.   A creditor, holding the judgment note of his debtor, may avail himself of the benefit thereof, when he sees fit.   He may delay until the danger of loss is impending, without sacrificing any advantage.

2.   Consent by creditors suing separate attachments out of the Circuit Court, that property attached be turned over to the assignee of the common creditor, subsequently appointed by the County Court, gives the latter court exclusive jurisdiction in the adjustment of claims against the property.

3.   In a controversy involving the priority of certain levies upon property of a common debtor, this court declines to interfere with the decree of the trial court giving the bank in question priority over certain creditors, and placing the latter upon the level with other unpreferred creditors.

[Opinion filed March 24, 1890.]

APPEAL from the County Court of Cook County; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. C. M. HARDY, for appellants.

Messrs. KRAUS, MAYER & STEIN, for appellees.

Messrs. FLOWER, SMITH & MUSGRAVE, for Commercial National Bank.

GARNETT, J.   This appeal brings here for review a decree of the County Court in the matter of George Bohner & Co., an insolvent corporation.   On January 26, 1889, a judgment by confession was rendered by the Superior Court of Cook County in favor of the Commercial National Bank of Chicago

against George Bohner & Co., for the sum of $5,635.38, upon which an execution was issued and delivered to the sheriff of Cook county at 5:45 P. M. of the same day. Early in the morning of January 28, 1889, the appellants and three other creditors sued out of the Circuit Court of Cook County separate writs of attachment against the same debtor, and placed them in the hands of the sheriff. The execution and writs of attachment were all levied about 7 o'clock A. M. of January 28th, on all the tangible property of the debtor, and a custodian placed in charge thereof. In less than one hour thereafter Bohner & Co. executed and delivered to appellee a deed of assignment for the benefit of creditors, which was at once filed in the office of the clerk of the County Court, and about 8:35 A. M. in the recorder's office of Cook county. The assignee, finding the insolvent's place of business and property in the possession of the sheriff, filed a petition the same day in the County Court, praying for an order on the sheriff to deliver the property to the assignee, subject to all the rights, "priorities and liens which may have been acquired by virtue of" the several writs. The same day the court entered an order, by consent of all the parties, directing the delivery to the assignee subject to all such rights, priorities and liens. The debtors then filed a petition, in which the assignee joined, praying for an adjudication upon the priorities of the bank and the attachment creditors. Another petition was filed by other creditors, attacking the priority claimed by the bank. Issues having been joined on these petitions, the question of priority was set for hearing in the County Court for April 2d, and on April 17th a decree was entered finding that the bank was entitled to the preference obtained by its execution and levy, but denying appellants any greater rights than other unpreferred creditors.

When the hearing of evidence was about to begin in the County Court, appellants objected to proceeding for want of jurisdiction, but the objection was overruled; appellants excepted, and the ruling is assigned as error. Appellants insist the Circuit Court should have been permitted to determine the question of priority as to them. That right they

parted with when they consented to the surrender of the property to the assignee. The surrender was not compulsory, but voluntary. Thereafter the process of the Circuit Court could not reach the property or its proceeds. The personal liability of the insolvent to appellants may still be settled in the attachment suits, but the power of complete control and disposition of the property and distribution of its proceeds was transferred to the County Court when delivery was made by the sheriff to the assignee by appellants' consent. They are not thereby deprived of any valuable right, as the County Court may order a trial by jury when that is the proper method of settling conflicting rights. Hanchett v. Waterbury, 115 Ill. 220. But a division between two courts of the duties pertaining to the administration of property, in the possession of an assignee of an insolvent estate, must. result in embarrassing the procedure to such an extent as to largely impair the value of the estate. The jurisdiction of the County Court does not attach to property detained by adverse execution or attachment, without the consent of the party for whom possession is held; but, consent once given, the County Court excludes all other jurisdictions in the adjustment of claims against the property. Consent and delivery bring the property within the terms of the deed, and it thereby becomes, to all intents and purposes, a part of the assigned estate. Hanford Oil Co. v. First National Bank, 126 Ill. 584, is authority on this point.

Appellants also complain of the decree because it denies them priority under their attachments. At the hearing they entirely failed to make out any case. They introduced evidence, but none of it tended to prove that either of them had a valid debt due when the attachments were issued. No proof whatever was given of any cause for attachment. The affidavits for attachment filed in the Circuit Court were offered and received in evidence. They were competent for the purpose of proving the fact that they were made and filed, but they did not tend to prove any fact stated in them. Whether, therefore, appellants, by their attachment suits, took unlawful preferences within the prohibition of the statute, we need

not inquire, as they showed no foundation whatever for the attachment proceedings. Error is also assigned upon the part of the decree awarding a preference to the bank. The judgment notes held by the bank were taken by it long prior to January 26, 1889, in the regular course of business, for loans made to George Bohner & Co. The finding in the decree is that preference of the bank was the result of its own superior diligence; but the appellants say that the action of the bank was inspired by information given to Eames, its president, by Bohner, president of the insolvent, to the effect that George Bohner & Co. were about to make an assignment, and that the making of the deed to appellee was delayed for the purpose of permitting the bank to perfect an execution lien. There is no direct evidence to support this charge. Eames and Bohner were old acquaintances, and the insolvent had been, during the whole of its corporate existence, a regular depositor and customer of the Commercial National Bank. Eames made frequent inquiries of Bohner as to the business of his company, and about January 20, 1889, having learned from him that the company had lost money, he asked Bohner to bring him a list of the liabilities. The list was accordingly handed to Eames on January 26th. Bohner admitted to Eames that the company was unable to pay all its debts, and said he did not know what to do. He informed Eames that the agents of some of the other creditors had advised him to make an assignment. Eames advised him not to make an assignment, but to try to get a compromise with his creditors. He said nothing to Eames of any intention to assign, nor about securing or preferring the bank, nor did he suggest or advise action by the bank. The evidence tends to prove that the assignment was not determined upon until after the bank execution was in the hands of the sheriff, and neither Eames nor the bank had notice of the intention to assign until after the execution lien was fixed. When Eames discovered the situation of the insolvent he sent for his attorney, and, after conference with him, placed in his hands the judgment notes, with instructions to proceed to judgment and execution at once. The order was obeyed, and upon these facts it can not

be said that the court erred in deciding that the bank prefer-
ence came by means of the vigilance of its president, and not
as a voluntary offering of the insolvent as a part of a scheme
to yield the dominion of all its property for the benefit of
creditors.

The testimony of appellants' witnesses, Fairbien and Mc-
Roberts, to the effect that Bohner had promised them to make
an assignment before the judgment of the bank was entered,
has not been overlooked. The promise is denied by Bohner,
but, assuming that he made the promise, yet the preference
of the bank is not unlawful if it was the result of its own
inquiry and swift movement after Eames discovered the seri-
ous condition of the debtor's affairs. The entry of judgment
two days before the delivery of the deed of assignment, Sun-
day only intervening, and the danger of insolvency, which was
then plain, are not conclusive evidence that the preference
was unlawful. The creditor holding a judgment note has the
right to determine when he will avail himself of the benefit
thereof, and may delay until the danger of loss is impending
without sacrificing any advantage. He has "a right to take
every precaution to save or secure his debt, and the fact that
he delays until the debtor may be on the eve of bankruptcy
is no argument against the good faith of his acts." Field v.
Geohegan, 125 Ill. 68.

The decree is affirmed.

*Decree affirmed.*